# CASES

## IN THE

# ORPHANS' COURT

WILLIAM T. DAYETT,

*vs.*

MERRITT N. WILLITTS, administrator of William H. Dockety, deceased.

### *New Castle, Dec.* 15, 1909.

The lien of a chattel mortgage is preserved against the proceeds of sale made of mortgaged property by the administrator of a deceased mortgagor, and is given precedence of payment over a judgment creditor.

The lien on personal property acquired in the life of a debtor by the levy of an execution is preserved against the proceeds of sale of the property levied on made by the administrator of the debtor, and is given precedence over the debt due to a prior judgment debtor who had no levy on the property sold.

Taxes are included within the class of "other demands" in the statute fixing the order for the payment of debts of a decedent, and are not to be paid in precedence to a judgment creditor of the deceased taxable.

EXCEPTIONS of William T. Dayett to the first and final account of Merritt N. Willitts, administrator of William H. Dockety, deceased. The facts are stated in the opinion.

Argued before CURTIS, Ch., and HASTINGS, J.

*Edward W. Cooch,* for exceptant.
*Martin B. Burris,* for accountant

HASTINGS, J. (delivering the opinion of the Court): Exceptions to the first and final account of Merritt N. Willits administrator of William H. Dockety, deceased, were filed, by and on behalf of William T. Dayett, a judgment creditor of said William H. Dockety, said judgment being No. 331 as of May Term, A. D. 1895, for a debt of three hundred and eighty dollars ($380.00), the following causes of exception, among others, being assigned:

"First. That the said administrator erred in not paying said judgment, or any part thereof, he having had due notice of said judgment, and having had funds in his hands as administrator applicable to the payment thereof.

"Second. That the said administrator erred in paying to himself the sum of four hundred and sixteen dollars ($416.00) for 'judgment, levy and interest,' to the exclusion of the judgment of the said William T. Dayett, the judgment of the said Merritt N. Willits being subsequent to that of the said William T. Dayett.

"Third. That the said administrator erred in allowing to himself the sum of three hundred and thirteen dollars and fifty cenrs ($313.50), for 'chattel mortgage and interest,' to he exclusion of the judgment of the said William T. Dayett, mortgages being in a class subsequent to judgments.

"Fourth. That the said administrator erred in paying 'school taxes 1907', taxes being included in a class subsequent to judgments.

"Fifth. That the administrator erred in making an allowance of seven dollars and forty-seven cents ($7.47) for cash paid, costs on Willis' judgment,' (evidently intended for Willitts' judgment), said judgment being subsequent to judgment held by the said William T. Dayett.

The witnesses were produced in this case, and the Court, after careful consideration of the evidence and the argument of counsel, have come to the following conclusions:

The exceptions may be classified as follows: First. The third, which relates to the chattel mortgage. Second. The first, second, and fifth, which relate to the judgment held by the

administrator against the deceased.    Third. The fourth and
sixth, which relate to the payment of taxes.

*First.*    With reference to the chattel mortgage.    The evi-
dence and records show that a chattel mortgage was given Sep-
tember 4th, 1906, by William H. Dockety and wife to Merritt
N. Willitts for the sum of $300, payable on or before the expira-
tion of three months from date, with lawful interest from date.
This chattel mortgage covered horses, cattle, wagons, etc., all
of which were sold at public sale by Merritt N. Willits, admin-
istrator of William H. Dockety, the mortgagor.    The said Mer-
ritt N. Willitts was also the mortgagee in the chattel mortgage.
It appears from the evidence that the property covered by
the chattel mortgage brought at the administrator's sale the
sum of $810.75, which was in excess of the mortgage debt.    If
we understand the contention of the counsel for the exceptant,
it is of a twofold nature: First, that a judgment of the excep-
tant being mentioned in the statute as of a higher class of debt
than a mortgage the administrator was bound to pay all judg-
ments before applying anything to the mortgage; and, second,
admitting that this preference could not extend to a judgment
creditor over a chattel mortgage creditor who had a lien upon
specific articles; yet, when the mortgagee in a chattel mortgage
failed to foreclose his mortgage and permitted the property
covered thereby to be sold at the administrator's sale and the
proceeds turned into the general fund in the hands of the admin-
istrator, the mortgagee forever loses his lien and his preference
and must share with other creditors of his class.    *Chapter* 477,
*p.* 616, 15 *Laws Del.,* as amended (22 *Laws Del., p.* 976, *c.* 458),
provides:

"Section 1.    A *bona fide* mortgage of personal property, if duly signed,
sealed and delivered by the party making it, and acknowledged as mort-
gages of real property are, shall, for the space of five years, be a valid lien
upon such personal property, though the possession remain in the mort-
gagor, if it be lodged for record in the Recorder's office of each county where
any of the mortgaged property is held, within ten days from the time
of the acknowledgment thereof."

The proper execution, the delivery, and the recording of
the chattel mortgage gave certain rights to the mortgagee with

respect to the mortgaged property, and at the same time, while leaving the mortgagor in possession of the property, took away from him certain rights with respect to it. The mortgagee could not sell the property except by foreclosure, and the mortgagor could not remove it without the written consent of the mortgagee.

Upon the death of the mortgagor does the mortgaged property, merely because it was in the mortgagor's possession, go into the hands of the administrator unconditionally, to be sold and the proceeds distributed under the statute which provides the order in which executors and administrators shall pay demands against the deceased? We are very clear that it does not. The mortgagee had a specific lien upon this property and, until the amount due the mortgagor upon such mortgage was paid, the property could not be a part of the estate of the deceased; in other words, it was the equity in such pledged articles that belonged to the estate, and not the articles themselves. The law is well laid down in 18 *Cyc.*, at *page* 464, under the head of "Secured Claims," as follows:

"According to the weight of authority, a debtor whose claim is secured by mortgage, pledge, or any specific lien need not present his claim for allowance in order to preserve his right to subject the property covered by the lien to the satisfaction of his claim, for the reason that such claims cannot in any just sense be considered claims against the estate, but the right to subject specific property to the claim arises from the contract of the debtor whereby he has during his life set aside certain property for its payment, and such property does not, except in so far as its value may exceed the debt, belong to the estate, and the instrument being of record or the property being in the possession of the creditor is notice to all the world of the contract. But where a mortgagee, pledgee, or other secured creditor seeks to obtain payment either in full or of a deficiency out of the general assets of the estate, and thus to enforce his claim against property not covered by his lien or held by him as security, his claim stands on the same footing with the claims of other creditors, and must be presented for allowance. The security of a mortgagee, pledgee, or other secured creditor is not affected by his presentation and securing the allowance of his claim."

There are numerous cases cited there to sustain this doctrine. A similar rule is laid down in *Woerner on American Law of Administration*, at *section* 408. Indeed, we find no decision

to the contrary. We know of no law and can conceive no reason for compelling a foreclosure of a mortgage in order that the lien may be preserved. Whether this property was sold under levy and execution, or at the administrator's sale of all the personal property of the deceased, can make no difference, as the administrator was bound under the law to satisfy the specific lien creditors in the order in which they had obtained their liens before applying anything to the general creditors, unless the statute provides otherwise, as it apparently does in *chapter* 186, *p.* 310, 15 *Laws Del.*, with respect to funeral expenses, medicines, medical attendance, and nursing.

*Second.* The second class of exceptions relate to the judgment held by the administrator against the deceased. The evidence and records show that a judgment was obtained by the said Merritt N. Willitts against the said William H. Dockety and wife at the May Term, 1904, for the sum of $600. Upon said judgment an execution was issued on August 28th, 1905, and a levy made by the sheriff on September 6th, 1905, upon certain horses, cattle, wagons, etc., of the defendants in the judgment. The exceptant also had a judgment against the deceased, obtained at the May Term, 1895, but upon that judgment there was no execution and levy. At the administrator's sale the chattels levied upon were sold for about $700, which was in excess of the amount due upon the judgment of Willitts. The counsel for the exceptant contended that the administrator was bound to pay all creditors of the same class *pro rata*, and could not pay one judgment creditor in full to the exclusion of another. The *Revised Code* (*c.* 111, *p.* 846, § 63) provides, as follows:

"An execution shall not bind goods and chattels until it is delivered to the sheriff or other proper officer to be executed. An execution shall, from the time it is so delivered, bind all the goods and chattels of the defendant within the bailiwick, which shall be actually levied upon within sixty days thereafter.  *  *  *"

The levy upon the goods and chattels was in force at the time they were sold. It appears, therefore, that the creditors in the two judgments were not of the same class; one having a specific lien and the other having none. We think that the

conclusions arrived at with respect to the lien of the chattel mortgage apply to this question, and that further consideration of it is unnecessary.

*Third.* The third and last class of exceptions relate to the payment of taxes. There was presented to the administrator, for payment, school and town, county and poor, and road taxes for the years 1905, 1906 and 1907, all being assessments upon personal property. The school taxes for 1907, amounting to $15.10, were paid by the administrator, and the balance he holds subject to the decision of the Court. The statute fixing the order in which executors or administrators shall pay demands against the deceased, being *chapter* 89, *Rev. Code* § 25, does not mention taxes, though the last class is composed of "other demands." It is contended by the counsel for the administrator that at common law taxes were of a high class and were payable after funeral expenses and costs of probate, and that, therefore, they were not "demands" within the meaning of the statute. In most of the states specific provision is made for the payment of taxes, and they were usually placed in a high class, though Pennsylvania places them in the lowest class. Our statute has provided the order in which demands against the estate of the deceased shall be paid, and, while such statute does not mention taxes, we think it was intended to include all legal claims against the estate, and that taxes must come under that class designated as "other demands". The tax laws provide a certain mode of assessment and that duplicates shall be placed in the hands of the collector, who is absolutely responsible to the county for the collection of the duplicates placed in his hands. That is to say, so far as the county is concerned, it has a charge against the collector, and not against the taxable. The statute has at the same time provided a very summary manner by which the collector may proceed against the taxable, and, until he proceeds, he has no lien upon the personal property. In this case he had not so proceeded. There is no priority given by the statute to the claims for taxes on personal property, and they must therefore be placed in the lowest class and be paid under the class of "other demands", and after judgments. It may be well to observe, also, that

there is nothing in the statute which prevents the tax collector from reducing his claim to judgment, and, of course, thereby placing it in a higher class.   That this estate is still indebted to William T. Dayett, a judgment creditor, in the sum of $380, is not denied, as we understand it.

The conclusion of the Court, therefore, is that Merritt N. Willitts, the administrator, should pay to the said William T. Dayett the balance remaining in his hands, amounting to $50.14, together with the sum of $15.10, which he has previously paid John A. Cleaver for school taxes for the year 1907, less the costs of this proceeding, and that the account in all other respects be approved.

Let an order be entered accordingly.