46 P.(2d) 50

SHORTLE et al. v. McCLOSKEY et al.

No. 4022.

Supreme Court of New Mexico.

May 17, 1935.

Rehearing Denied June 24, 1935.

See, also, 38 N. M. 548, 37 P.(2d) 800.

T. W. Gibson, of Albuquerque, for appellants.

John F. Simms, of Albuquerque, for appellees.

BICKLEY, Justice.

The appellee, Alice M. Shortle, as the owner and holder of a note for $17,500 and interest, joined by the Albuquerque National Trust & Savings Bank, as trustee, under the deed of trust given to secure the note, filed their complaint against Jesse St. Claire McCloskey and Olive E. McCloskey, his wife, and Lulu M. Mc-Closkey, who were joint makers of the note and deed of trust, and made defendant also Jesse St. Claire McCloskey as administrator with the will annexed of the estate of Francis Newton McCloskey, deceased, who in his lifetime was one of the four signers of the note and deed of trust.

Personal judgment was prayed against Jesse St. Claire McCloskey, Olive E. Mc-Closkey, and Lulu M. McCloskey, and each of them, but nothing more than foreclosure was prayed for against the administrator with the will annexed. Personal service was had upon all defendants.

On October 21, 1933, a default decree was entered which recites that it was taken "upon oral and documentary evidence introduced by the plaintiffs," and which resulted in a personal judgment against the three living defendants, including 10 per cent. additional for attorney's fees, but nothing more than a foreclosure as to the administrator with the will annexed.

On March 30, 1934, and within six months from the entry of the decree, all the defendants prayed for and were granted an appeal not only from the final judgment of October 21, 1933, but also from an order of confirmation of the sale made by the receiver and special master. Appellees filed a motion to dismiss the appeal for duplicity and also in so far as the same attempted to review orders made after the entry of final decree, upon the ground that the appeal was not prayed within twenty days thereafter, as provided by rule II, § 2, Rules of Appellate Procedure.

On October 1, 1934, this court sustained the motion to dismiss as to the appeal from the order confirming the sale, and overruled the motion as to the appeal from the decree of October 21, 1933. 38 N. M. 548, 37 P.(2d) 800.

The only questions involved in a review of the final judgment of October 21, 1933, are, first, Did the court err in adjudging the lien of plaintiff's deed of trust to be a first lien upon the portion of the real estate described in the deed of trust which had belonged to Francis Newton Mc-Closkey, deceased, whose estate was in the process of settlement at the time of the judgment? and, second, Was the judgment void because it awarded to plaintiffs as attorneys fees 10 per cent. of the amount of the note secured found to be due and payable?

No direct proceedings were instituted to vacate the final judgment. The first time the court's attention was called to any alleged vice in the default judgment was in a petition to restrain the foreclosure sale filed February 23, 1934, in

which it is said that in a suit by the administrator of the estate of Francis Newton McCloskey, commenced November 23, 1933, to subject the real estate of the deceased, described in the deed of trust aforesaid, to the payment of the debts allowed against the estate and to have the said real estate subjected to a first, prior, and superior lien for the expenses of·the administration of the estate, and that said real estate be sold at private sale, on November 25, 1933, a judgment was entered in said cause awarding the relief sought.

Passing by the question as to whether this proceeding could be regarded as a "motion * * * directed against" the default judgment and foreclosure decree within the contemplation of section 105-801, Comp. St. 1929, it was in any event filed more than thirty days after the entry of such default judgment and decree, and such judgment and decree no longer remained under the control of the court, except as it might be set aside for "good cause shown," under the statute authorizing the setting aside of default judgments, or unless set aside for irregularity, or set aside for fraud in its procurement, none of which proceedings were attempted.

■ Appellant asserts that of two conflicting judgments rendered by the court upon the same rights of the same parties that which is later in time will prevail. We think, however, that where a final judgment no longer remains under the control of the court for the purpose of considering or correcting alleged errors urged against it, a subsequent inharmonious judgment must be regarded as inadvertent and not as a modification of the earlier judgment.

■ We approach then the proposition of appellant that the judgment and foreclosure decree is void. In support of this proposition appellant cites sections 47-510, 47-511, Comp. St. 1929, as follows:

"47-510. *Id.—Claims having preference.* As soon as the executors are possessed of sufficient means over and above the expenses of administration, they shall· pay off the charges of the last sickness and funeral of the deceased, and they shall next pay any allowance which may be made by the court as provided by law for the maintenance of the widow and children."

"47-511. *Id.—Order of payment.* Other demands against the estate shall be payable in the following order:

"First. Claims entitled to preference by express provision of law of the United States or of this state.

"Second. Taxes.

"Third. All other debts.

"Fourth. Legacies."

He then argues that the debt of deceased to plaintiff secured by the deed of trust falls within the classification "other demands against the estate" and "all other debts," and therefore must be postponed to the payment of "the expenses of

administration," which is one of the preferred demands against the estate. He further argues that when the plaintiff loaned the money to the deceased he was charged with notice of these statutes, and that therefore, assuming that upon a review of a default judgment the complaint is to be tested as upon demurrer, as decided in Dame v. Cochiti Reduction & Improvement Co., 13 N. M. 10, 79 P. 296, the complaint is defective because it failed to allege that the personal estate of the deceased debtor was insufficient to discharge the expenses of the administration and other charges which are said to be preferred over "other debts" of the nature of plaintiff's demand. Appellant asserts that the statutes quoted create a prior lien in favor of claims having preference superior to the specific lien of a mortgage executed during decedent's lifetime upon specific property. We think this is not the law.

In 24 C. J., Executors and Administrators, § 1189, it is said: "When the personal estate is insufficient, a specific lien binding decedent's land at the time of his death has priority as to the land bound thereby over all unsecured debts of decedent or claims against the estate, and in distributing the proceeds of the land among creditors the holder of the lien is entitled to be paid first. * * * In accordance with the rule stated it has been held that the proceeds of the incumbered property must be applied to the payment of the lien in priority to funeral expenses or last sickness, and of administering the estate, debts due the United States or the state, and taxes not constituting a prior lien on the land."

Woerner on Administration (3d Ed.) § 362, is authority for the statement that expenses necessary to the administration of the estate are subject to the lien of a mortgage executed on specific property by the deceased in his lifetime. The justice of this rule is plain. The creditor merely gets the benefit of a contract made with the deceased.

In Jones on Mortgages (8th Ed.) § 604, it is said:

"The expenses of administration of the estate of a deceased mortgagor are not a lien prior to an existing mortgage on his land, though the other property of the deceased is insufficient to pay such expenses. The lien of the mortgagor being prior in time, it must prevail as against such expenses.

"The mortgagee is entitled to the amount of his mortgage out of the proceeds of the mortgaged property against general creditors of the estate, even where such estate is insolvent. And where the administrator is ordered to sell the mortgaged premises free of liens the mortgagee is entitled to have the entire proceeds of the sale applied to the payment of his mortgage debt, even to the exclusion of claims for costs of administration, funeral expenses and expenses of last sickness."

■ One of the cases cited in support of the text by Woerner, and also by Jones,

supra, is Shepard v. Saltzman, 34 Or. 40, 54 P. 882, 883. In that case the court recognized the principle that a proceeding to foreclose a mortgage is cognizable in a court of equity notwithstanding the estate is in course of administration, and further said: "Looking throughout the purview of all these sections of the statute touching the administration of the estates of deceased persons, it seems clear that it was not intended that the compensation of the executor or administrator and the expenses of administration should become a lien superior in right to a mortgage of the deceased, which, from the nature of things, is prior in time; and that, in any event, only the costs of sale under the special procedure in the county court to devest the lien and the taxes upon the property is entitled to precedence in the order of payment. Such has been the holding under analogous statutes in Indiana and California. Ryker v. Vawter, 117 Ind. 425, 20 N. E. 294; Murray's Estate, 18 Cal. 686. The justice of the rule is manifest. Indeed, a mortgage would be a thing of uncertain and precarious value if the costs and expenses of administration of the estates of deceased persons were advanced to a prior right of payment over a mortgage lien. Such costs and expenses are so variable and dependent upon conditions and contingencies, both of time and circumstance, not within the reasonable foresight of business acumen to definitely estimate, as preclude the idea that the mortgagee contracted with reference to them when he acquired his lien. Ordinarily, the senior lien is prior and superior in right of payment, and there exists no sufficient reason why the general rule should not prevail in a case of the nature under consideration."

It appears that the rule there stated found some support in an Oregon statute, but we agree with Mr. Woerner that, in the absence of statute to that effect, most classes of debts preferred by statute must be postponed to debts constituting a specific lien to the extent of the property covered by the lien. See Woerner on Administration (3d Ed.) § 365.

Mr. Woerner says in the same work, at § 408: "The death of a mortgagor or pledgor does not release the lien, nor extinguish the right of a mortgagor or lienholder to foreclose."

█ It will be further helpful to examine the language of the statute relied upon by appellant. Section 47-510 says: "As soon as the executors are possessed of sufficient means over and above the expenses of the administration, they shall pay off the charges of the last sickness and funeral of the deceased," etc.

It appears to us that the executor does not become "possessed" of property mortgaged by the deceased during his lifetime, except as it is incumbered by the lien, or, in other words, that he only becomes "possessed" of the equity in such mortgaged property and not of the property itself.

In 24 C. J., Executors and Administrators, § 1182, it is said: "Property which is subject to a lien or incumbrance can in a strict sense be considered assets of the estate only so far as its value exceeds the amount of the incumbrance, and hence it follows that the rules of priority applicable to the case of general assets of the estate must be subject to considerable modification when applied to incumbered property, although the excess after payment of the incumbrance will be applied according to the usual rules of priority."

In Dayett v. Willitts, 9 Del. Ch. 424, 74 A. 689, 690, the court said: "Upon the death of the mortgagor does the mortgaged property, merely because it was in the mortgagor's possession, go into the hands of the administrator unconditionally, to be sold and the proceeds distributed under the statute which provides the order in which executors and administrators shall pay demands against the deceased? We are very clear that it does not. The mortgagee had a specific lien upon this property, and, until the amount due the mortgagor [mortgagee?] upon such mortgage was paid, the property could not be a part of the estate of the deceased; in other words, it was the equity in such pledged articles that belonged to the estate, and not the articles themselves."

The statement of Mr. Justice Baldwin delivering the opinion of the court in Brent v. Bank of Washington, 10 Pet. 596, 611, 9 L. Ed. 547, is persuasive.

Considering an act of Congress declaring that where any revenue officer or other person hereafter becomes indebted to the United States shall become insolvent, or where the estate of any deceased debtor, in the hands of executors or administrators, shall be insufficient to pay all debts due from the deceased, the debt due to the United States shall be first satisfied, said: "This preference is in the appropriation of the debtor's estate; so that if, before it has attached, the debtor has conveyed or mortgaged his property, or it has been transferred in the ordinary course of business, neither are overreached by the statutes ([Conard v. Atlantic Ins. Co.] 1 Peters, [386] 440 [7 L. Ed. 189]); and it has never been decided that it affects any lien, general or specific, existing when the event took place which gave the United States a claim of priority."

Further in support of this view we direct attention to section 105-2101, Comp. St. 1929, upon which appellant relied in his suit to subject the real estate in question to the discharge of the debts allowed against the estate of the deceased. In the next succeeding section it is provided that when the administrator is compelled to resort to the real estate to obtain funds to pay debts, he shall in his petition, among other things, state if the same or any thereof is incumbered, and the nature and amount of such incumbrance. This requirement seems to be in accord with the view that incumbered property stands on a different footing from unincumbered

property, otherwise there would have been no apparent necessity for this requirement. We think that all the Legislature intended by sections 47-510 and 47-511 was to classify the charges against the estate of decedents, unless specific liens created during the lifetime of the decedent absorb the property. See Hildebrand v. Kinney, 172 Ind. 447, 87 N. E. 832, 19 Ann. Cas. 788.

Appellant relies strongly upon Perez v. Gil's Estate et al., 29 N. M. 313, 222 P. 907, 35 A. L. R. 43. While some language used therein is perplexing, we think that decision is not contrary to what we here decide.

We are not impressed with appellant's contention that the judgment is void because it grants attorney's fees provided by the note. This court has repeatedly held to the contrary. In Armijo v. Henry, 14 N. M. 181, 89 P. 305, 309, 25 L. R. A. (N. S.) 275, the court said: "There is much confusion as to whether a stipulation for attorney's fees in a note can be enforced, but it has been settled in this territory, in Bank of Dallas v. Tuttle, 5 N. M. [427] 432, 23 P. 241, 7 L. R. A. 445, and we see no reason to depart from the doctrine there announced."

These two decisions, and Howey v. Gessler, 16 N. M. 319, 117 P. 734, are cited by the writer of the annotation on "Validity of Stipulation for Attorneys' fees," L. R. A. 1915B, 928, along with citations to decisions of courts of many other jurisdictions to the proposition that where definite amount or per cent. is specified in the note, the plaintiff is entitled to recover the stipulated fee; the reasonableness thereof not being contested or being found or presumed. In the case at bar, where a personal judgment based upon the note was obtained accompanied by foreclosure of a lien to secure the note, the judgment and decree being rendered upon default after hearing oral and documentary evidence introduced by the plaintiffs, and there being no bill of exceptions in the record, we do not hesitate to say that the judgment is not void because it awards as attorneys' fees the specified per cent. of the amount found to be due as provided in the note.

Finding no error in the record, the judgment must be affirmed, and it is so ordered.

SADLER, C. J., and HUDSPETH, WATSON, and ZINN, JJ., concur.